**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**CASTOLO WILMER DIAZ
MANCILLA,**                                    *
                                               *
  *Plaintiff,*                                 *
                                               *
  v.                                           *        Civil Case No: 1:22-cv-00032-JMC
                                               *
**CHESAPEAKE OUTDOOR**                         *
**SERVICES, LLC et al,**                       
                                               *
  *Defendants.*

  *      *      *      *      *      *      *      *      *      *      *      *

<u>**MEMORANDUM OPINION**</u>

On January 6, 2022, Plaintiff filed this wage and overtime lawsuit against (1) Chesapeake

Outdoor Services, LLC ("Defendant Chesapeake Outdoor"), (2) Chesapeake Tree & Outside

Services, LLC ("Defendant Chesapeake Tree"), (3) Keith Allen Cotter ("Defendant K. Cotter"),

and (4) Charlotte Ellen Cotter ("Defendant C. Cotter").  (ECF No. 1).  Specifically, Plaintiff brings

claims under three different statutes: (1) the Fair Labor Standards Act of 1938, as amended, 29

U.S.C. §§ 201 *et seq.* ("FLSA"), (2) the Maryland Wage and Hour Law, MD. CODE ANN., LAB. &

EMPLOY. §§ 3-401, *et seq.* ("MWHL"), and (3) the Maryland Wage Payment and Collection Law,

MD. CODE ANN., LAB. & EMPLOY. §§ 3-501 *et seq.* ("MWPCL").  *Id.* at p. 2.[1]  None of the parties

have made a demand for a jury trial, and the parties have indicated that this matter is to be tried

without a jury.  (ECF No. 53 at p. 1).  Presently before the Court is Plaintiff's Motion for Partial

Summary Judgment (ECF No. 58).   In addition to this Motion, the Court has considered

Defendants' Opposition (ECF No. 64) and Plaintiff's Reply (ECF No. 65).  The Court finds that

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers
provided in the electronic filing stamps located at the top of every electronically filed document.

no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons more fully explained below, the Court will GRANT in part and DENY in part Plaintiff's Motion.

## I.   BACKGROUND[2]

Defendant Chesapeake Tree and Defendant Chesapeake Outdoor operate a tree removal and care business.  (ECF No. 58-1 at p. 3).  Defendants do not dispute the fact that Defendant Chesapeake Tree and Defendant Chesapeake Outdoor are joint employers.  (ECF No. 64 at p. 10).  Regarding Defendant Chesapeake Tree, Defendant C. Cotter owns 51% and Defendant K. Cotter owns 49%.  (ECF No. 58-1 at p. 4).  Defendant C. Cotter is the mother of Defendant K. Cotter.  (ECF No. 58-2 at p. 3).  Defendant K. Cotter manages the tree-related work performed by the employees of Defendant Chesapeake Tree and Defendant Chesapeake Outdoor, i.e., Defendant K. Cotter does not manage the "office work" of the corporate Defendants.  *Id.* at pp. 51–52.  Defendant K. Cotter does all the hiring for the corporate Defendants, has the ability to set the pay rate for employees, and has the ability to fire employees.  *Id.* at pp. 10, 13, & 25.  Defendant C. Cotter inputs the employees' work hours into the payroll system, but a separate payroll company handles all other aspects of the corporate Defendants' payrolls.  (ECF No. 58-3 at pp. 19–20).  Defendant C. Cotter works 9:00 a.m. to 5:00 p.m. from her home.  *Id.* at pp. 37–38; (ECF No. 64 at p. 14).  Ordinarily, Defendant C. Cotter would go to the shop shared by the corporate Defendants between 7:00 a.m. and 7:30 a.m. to feed the shop cats.  *Id.* at pp. 37–58.  Because Defendant C. Cotter writes the employees' checks, Defendant C. Cotter presumably is the person that is in charge of determining whether to pay someone overtime.  *Id.* at pp. 44–45.  Defendant C. Cotter also has at least some ability to change an employee's hourly rate.  *Id.* at p. 50.  Regarding the power to

---

[2] The Court's Section I provides a summary of facts that "are uncontroverted or set forth in the light most favorable to . . ." Defendants as the nonmoving parties.  *McDonald v. Metropolitan Life Ins. Co.*, No. JFM 08-02063, 2009 WL 3418527, at *1, n. 1 (D. Md. Oct. 20, 2009) (other citation omitted).

fire an employee, Defendant C. Cotter is unsure whether she possesses such a power. *Id.* at p. 54. However, even if Defendant C. Cotter does have firing power, she has never exercised it. *Id.*

During the relevant period, Plaintiff worked as a "groundsman." *Id.* at p. 28. This position entailed cleaning up logs and debris dropped as a result of tree cutters working up in the trees. *Id.* at pp. 28–29. Plaintiff worked in this position from roughly July 2020–March 2021. (ECF No. 58-1 at p. 18). Plaintiff was paid hourly for the duration of his employment. (ECF No. 58-3 at p. 30). Plaintiff was paid $14.00/hour during his employment, but he was mistakenly paid $15.00/hour for a brief period. *Id.* at pp. 119–20. Sometimes Plaintiff would arrive at the shop at 7:00 a.m. because he would ride to work with another employee. (ECF No. 58-2 at p. 22). However, most employees usually showed up to the shop between 7:30 a.m.–7:45 a.m. *Id.* at p. 9. The trucks usually did not depart the shop for a jobsite until between 8:00 a.m.–8:30 a.m. *Id.* Between the time employees arrived at the shop and the trucks departed for a jobsite, the employees usually stood around half the time. *Id.* Plaintiff was not required to be at the shop by 7:00 a.m. (ECF No. 58-3 at p. 33). Although drivers had to prepare the trucks before departing for job sites, other employees, such as groundsman, mostly hung around drinking coffee, working on their cars, or conversing with one another. *Id.* at p. 31. Occasionally, there would be jobs such as loading plywood that would be performed prior to the trucks departing. (ECF No. 58-2 at p. 10). Only a few employees had the ability to operate a skid loader, and some did not want to attempt stacking plywood. *Id.* On a couple of occasions, Plaintiff was seen blowing off air filters, which is a task that takes approximately five to ten minutes. (ECF No. 58-3 at p. 86.).

Despite the fact that little or no work was performed from 7:00 a.m.–8:00 a.m.—other than work performed by Drivers—Defendants paid the employees, including Plaintiff, for this time.

(ECF No. 64 at p. 10).  Regardless of what time an employee arrived at the shop, Defendant C. Cotter began each employee's work hours at 7:00 a.m.  (ECF No. 58-3 at p. 33).

There was not a lunch policy applicable to the employees, but the tree cutters and crane operators generally set the lunch times based on when they wanted a break.  *Id.* at p. 38.  Plaintiff would take his lunch break at the same time as everyone else.  (ECF No. 64-4 at p. 9).  No work was performed until the tree cutter returned to the tree or the crane operator returned to the crane. (ECF No. 58-3 at p. 38).  Nonetheless, employees, including Plaintiff, were paid for this time. (ECF No. 64 at p. 11; ECF No. 64-1 at p. 2, ¶¶ 8–9; ECF No. 58-3 at pp. 33, 42–43).

Regarding records concerning Plaintiff's time spent working, Defendants possess paystubs and the invoices Plaintiff submitted.  (ECF No. 58-3 at p. 34).  However, Defendants do not possess timecards used for clocking in and out, and employees did not clock in and out for lunch while at jobsites.  *Id.* at pp. 34, 39.  Throughout his employment, Plaintiff never complained to Defendants regarding a lack of overtime compensation.  (ECF No. 64-4 at p. 21).

Plaintiff is seeking partial summary judgment on four issues: (1) that the corporate Defendants were joint employers of Plaintiff, (2) that all defendants violated the FLSA and supplemental state employment statutes, (3) that Defendant K. Cotter and Defendant C. Cotter qualify as employers of Plaintiff, and (4) that statutory liquidated damages under the FLSA and MWHL should be awarded.  (ECF No. 58 at pp. 1–2).  In response, Defendants argue that (1) Defendant C. Cotter is not liable as an employer, (2) Defendants did not violate wage and hour laws, (3) Plaintiff was overpaid as to offset overtime owed, if any, and (4) even if Defendants violated wage and hour laws, liquidated damages are not warranted.  (ECF No. 64).

## II.      LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986).  A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party.  *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)).  However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799–800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).  Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330–31 (4th Cir. 1998).

## III.     ANALYSIS

Under the FLSA, an employer shall not "employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which

he is employed." 29 U.S.C. § 27(a)(1).  Similarly, the "MWHL requires that employers 'pay an overtime wage of at least 1.5 times the usual hourly wage.'" *De Paredes v. Zen Nails Studio, LLC*, No. TDC-20-2432, 2023 WL 2207405, at *4 (D. Md. Feb. 24, 2023) (quoting MD. CODE ANN., LAB. & EMPL. § 3-415(a)).  "The MWHL is the state statutory equivalent of the FLSA" *McFeeley v. Jackson Street Ent.*, 47 F. Supp. 3d 260, 267, n. 6 (D. Md. 2014), *aff'd*, 825 F. 3d 235 (4th Cir. 2016) (other citation omitted).  "Accordingly, Plaintiff's overtime claims under the MWHL stand or fall on the success of their claims under [the] FLSA." *De Paredes*, 2013 WL 2207405 at * 4 (other citation omitted); *see also Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 653–58 (2014) (explaining that "both the [M]WHL and the [M]WPCL are vehicles for recovering overtime wages.").  Furthermore, "as with the MWHL, an overtime claim under the MWPCL has the same elements as an FLSA claim." *Hunt v. Constantine Com. Constr.*, No. TDC-20-1846, 2023 WL 2744491, at *5 (D. Md. Mar. 31, 2023) (*citing Fiallos v. Hamzah Slaughter House, LLC*, No. JMC-20-3577, 2022 WL 111165, at *2 (D. Md. Jan. 11, 2022)).  Therefore, "Plaintiff's overtime claims under the FLSA, MWHL, and MWPCL can be analyzed together under the FLSA standards." *Hunt*, 2023 WL 2744491 at *5.  To prevail on his claims, Plaintiff must establish that: "(1) [he] was employed by Defendants; (2) [he] worked overtime hours for which [he] was not properly compensated; and (3) Defendants had knowledge of the hours worked." *Id.*

### A. The Court Cannot Conclude That Defendant C. Cotter Was an Employer of Plaintiff As a Matter of Law.

Defendants have admitted that Defendant Chesapeake Tree and Defendant Chesapeake Outdoor qualify as joint employers.  (ECF No. 64 at p. 10).  Furthermore, Defendants have not argued against a finding that Defendant K. Cotter qualifies as an employer for purposes of the case *sub judice*.  Rather, Defendants argue that "[t]he Individual Defendants are not jointly liable in this action because all wages owed have been paid." *Id.* at p. 13.  The only additional argument

6

Defendants make against a finding of employer status pertains to Defendant C. Cotter.   *Id.* ("Charlotte Cotter is not liable as an 'employer' because she was not a supervisor, and did not hire or fire employees.").   As such, Defendants concede that Defendant K. Cotter qualifies as an employer for purposes of the case *sub judice*.  *See Kissi v. Panzer*, 664 F. Supp. 2d 120, 123 (D.D.C. 2009) ("Because the plaintiff's opposition fails to address the defendants' arguments, the Court may treat the defendants' motion as conceded.").

"The FLSA defines 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'"  *Gaske v. Crabcake Factory Seafood House, LLC*, No. 18-2630-JMC, 2021 WL 5326465, at *2 (quoting 29 U.S.C. 203(d)).   "The Fourth Circuit has adopted the 'economic reality test' to determine whether an individual qualifies as an employer under the FLSA."  *Gaske*, 2021 WL 5326465 at *2 (citing *Escobar v. Steelesoft Mgt., LLC*, No. GLR 12-2426, 2019 WL 3323202, at *4 (D. Md. July 24, 2019)).   "The economic reality test is also used to determine whether an individual qualifies as an employer under the MWHL and MWPCL."  *Gaske*, 2021 WL 5326465 at *2 (other citation omitted).   "Under this test, the plaintiff bears the burden of establishing whether the defendant is an employer."  *Id.* (other citation omitted).   The factors the Court considers under this test include whether the alleged employer:

> (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records.

*Id.* (other citation omitted).   "No one single factor is dispositive, and courts ultimately consider the totality of the circumstances in evaluating whether an individual qualifies as an employer under the economic realties test."  *Id.* (other citation omitted).

The Court first recognizes that even though Defendant C. Cotter has an ownership interest in at least Defendant Chesapeake Tree, "such an interest is not dispositive of [a parties'] status as

an employer." *Id.* at *4.  Indeed, "[a]n individual's status as a high-level corporate shareholder or officer does not automatically impart 'employer' liability to that individual, as individual liability is dictated by the economic reality of the employment relationship."  *Id.* (other citations and internal quotation marks omitted).  Accordingly, whether Defendant C. Cotter is an employer for purposes of the case *sub judice* must be determined by the test outlined above.

Regarding the first factor, Plaintiff over-interprets Defendant C. Cotter's deposition testimony regarding her ability to hire and fire employees.  Defendant C. Cotter definitively stated that she does not have the power to fire an employee because such a power was not "under [her] jurisdiction at all."  (ECF No. 58-3 at p. 54).  Defendant C. Cotter asserted that Defendant K. Cotter "pretty much" handles the hiring and firing because "he knows what he's looking for."  *Id.*  Only when Plaintiff's counsel asked a leading question regarding Defendant C. Cotter's firing power did Defendant C. Cotter state, "I guess.  I don't know. I've never exercised that power."  *Id.* Furthermore, even if Defendant C. Cotter had the power to fire employees, such a power alone would not establish Defendant C. Cotter's status as an employer.  *Gaske*, 2021 WL 5326465 at *4 ("Even assuming one or two [p]laintiffs were hired or fired by [defendant], such a fact alone would not establish employer status.").

Regarding factor two, three, and four, Plaintiff relies on Defendant C. Cotter's general bookkeeping and management of employment records to justify a finding of employer status. (ECF No. 65 at p. 4).  Furthermore, Plaintiff asserts that Defendant C. Cotter determined whether an employee received overtime and had the ability to give an employee a raise.  *Id.*  Plaintiff relies on the Ninth Circuit case of *Bonnette v. Cal. Health and Welfare Agency* as a case in which an employer was found liable even without clearly having the power to hire and fire because "their power of the employment relationship by virtue of their control over the purse strings was

8

substantial." (ECF No. 65 at p. 3 (quoting *Bonnette*, 704 F.2d 1465, 1470 (9th Cir. 1983)).  Putting aside the fact that *Bonnette* involved an action against welfare agencies of the State of California and three of its counties, this Court  recognizes that in addition to controlling the purse strings, the appellants in *Bonnette* "exercised considerable control over the structure and conditions of employment by making the final determination . . . of the number of hours each . . . worker would work and exactly what tasks would be performed." *Bonnette*, 704 F.2d at 1470.  There has been no evidence produced indicating that Defendant C. Cotter—a now eighty-year-old who performs the office functions of the corporate defendants and comes to the shop to feed the shop cats— exercised any control over the work performed by any employee.

Going further, the Court cannot, at this juncture, conclude based on the evidence before it that Defendant C. Cotter had the ability to enhance or reduce an employee's pay at any time. Defendant K. Cotter testified at deposition that he and Defendant C. Cotter set the rates of pay for the employees.  (ECF No. 58-2 at p. 28).  However, when addressing the mistake of increasing Plaintiff's pay to $15.00/hour, Defendant C. Cotter testified at deposition that she does not always have the ability to give such a raise, "[b]ut in [that] case I thought that he deserved it because he was a driver."  (ECF No. 58-3 at p. 41).  Viewing this testimony in the light most favorable to Defendants, the Court finds that such testimony could reasonably be construed as Defendant C. Cotter providing a raise only because she thought Plaintiff was a driver and that all drivers were paid $15.00/hour.

For the reasons provided immediately above, the Court will GRANT Plaintiff's Motion to the extent that it seeks summary judgment regarding the joint employer status of the corporate Defendants, as well as the status of Defendant K. Cotter as an employer.  However, as a trier of fact could conclude that Defendant C. Cotter was not an employer as to expose Defendant C. Cotter

to liability under Plaintiff's claims, the Court will DENY Plaintiff's Motion to the extent that it seeks employer status for Defendant C. Cotter.

**B. There Is a Genuine Dispute of Material Fact Regarding Whether Plaintiff Worked Overtime Hours.**

Based on the evidence before it, and viewing that evidence in the light most favorable to Defendants, the Court concludes that there is a genuine dispute of material fact regarding whether Plaintiff worked overtime hours so as to be entitled to overtime pay. "[E]mployees have the initial burden of proving they worked a certain number[] of hours, which can be proved through an employee's testimony giving his recollection of hours worked." *Marroquin v. Canales*, 505 F. Supp. 2d 283, 297 (D. Md. 2007) (other citations and internal quotation marks omitted). "The burden is then shifted to the defendants to come forward with evidence of the exact number of hours worked or with evidence to negate the reasonableness of the inference to be drawn from the plaintiff's evidence." *Id.* (other citations and internal quotation marks omitted). "Under the FLSA, however, it is the employer, not the employee, who has the duty to keep proper records of wages and hours worked." *Hunt*, 2023 WL 2744491 at *5 (citing 29 U.S.C. § 211(c); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 580, 687 (1946)). "When an employer fails to maintain accurate pay records, 'the solution . . . is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work.'" *Hunt*, 2023 WL 2744491 at *5 (quoting *Anderson*, 328 U.S. at 687). "Rather, in the absence of employer records establishing the hours worked, an employee may establish overtime pay by providing 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'" *Hunt*, 2023 WL 2744491 at *5 (quoting *Anderson*, 328 U.S. at 687). "Upon such a showing, the burden shifts to the employer to present evidence of the exact number of hours worked or 'evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence.'" *Hunt*,

2023 WL 2744491 at *5 (quoting *Anderson*, 328 U.S. at 687–88).  "Where an employer does not keep accurate timekeeping records and liability hinges on the credibility of each parties' testimony, summary judgment is improper because weighing evidence and determining witness credibility is reserved for the jury." *Fiallos*, 2022 WL 111165 at *3 (other citation and internal quotation marks omitted).

Because Defendants claim that they paid Plaintiff hours he was not required to work in the morning between 7:00 a.m.–8:00 a.m., and during lunch breaks, the issues in this case become twofold: (1) how long Plaintiff took on lunch breaks and whether Plaintiff worked (and if so, how much) during the morning hour before the trucks departed, and (2) whether the time Plaintiff spent not working during those two periods reduces Plaintiff's total work hours as to preclude his entitlement to overtime pay.

Here, there is no dispute that employees did not utilize timecards while at jobsites, nor did Defendants provide a means for tracking an employee's actions during the morning hour before trucks departed for jobsites.  To meet its burden in light of Defendants' failure to maintain adequate records, Plaintiff relies on the time records provided by Defendants that indicate the total number of hours for which Plaintiff was paid each week.  Furthermore, Plaintiff relies on testimony of other employees to establish that Plaintiff arrived at the shop at 7:00 a.m. and remained busy until the trucks departed for jobsites.  (ECF No. 58-1 at p. 28).  Although Defendants argue that all employees were paid for non-compensable lunch breaks and one hour each morning, Plaintiff argues that Plaintiff's total hours set forth in the existing time records indicate the total number of hours over forty which Plaintiff worked.  In opposition, Defendants have come forth with evidence indicating that employees could take over an hour for lunch, tree cutters and crane operators set the times for lunch based on their level of exhaustion, and Plaintiff blew off filters in the morning

for five to ten minutes on a couple of occasions.  Contrary to Plaintiff's assertion, neither Defendant C. Cotter nor Defendant K. Cotter admitted through deposition testimony that Plaintiff "performed a significant number of tasks in the morning[.]"  (ECF No. 65 at p. 5).  Although Defendants did indicate that several possible tasks could be performed in the morning, they never said that Plaintiff did anything more than occasionally blow off filters.  Defendants also offer one affidavit and three depositions of employees indicating that lunch could sometimes go beyond one hour and that Plaintiff rarely did any work in the morning before the trucks departed for jobsites.[3] (ECF No. 64 at pp. 7–9).  Thus, genuine issues of material fact remain regarding the hours Plaintiff spent working.

Plaintiff attached to his Motion a chart (ECF No. 58-8 at p. 2) which Defendants provided to Plaintiff through discovery on September 13, 2022.  (ECF No. 65 at p. 7).  Initially, this chart was provided by Defendant K. Cotter in response to an interrogatory asking for the number of hours—grouped into individual weeks—that Plaintiff worked for Defendants.  *Id.*  After this initial disclosure, Defendant Chesapeake Outdoor and Defendant Chesapeake Tree relied on the same chart in answering interrogatories requested after depositions of the parties occurred.  *Id.*  Plaintiff argues that the original chart provided during discovery not only clearly shows that Plaintiff worked overtime, but does so even after taking into account the deductions for morning and lunch hour time claimed as "time paid but not worked" by Defendants .  (ECF No. 58-1 at p. 36).  In their Opposition however, Defendants attached an affidavit of Defendant C. Cotter that includes "an amended . . . chart [(ECF No. 64-1 at p. 4)] of Plaintiff's hours and pay . . ." that claims to show that Plaintiff did not work overtime hours.  (ECF No. 64 at p. 5).  In response, Plaintiff argues that Defendants' reliance on the amended chart to defeat an overtime claim established by an

---

[3] Although Plaintiff classifies such deposition and affidavit testimony as inherently unreliable "happy camper testimony," the Court is not determining the veracity of such testimony at this stage.

earlier version is contrary to "well established law in this circuit and other circuits that a party may not create a genuine issue of fact in response to a summary judgment motion by filing an affidavit that contradicts earlier deposition testimony." (ECF No. 65 at p. 7 (quoting *King v. Va. Empt' Comm'n*, No. 93-1619, 1994 WL 416439, at *3 (4th Cir. Aug. 10, 1994)) (other citations omitted).

The Court disagrees with Plaintiff regarding the ability of Defendants to utilize the amended chart. Plaintiff does not argue that this amended chart contradicts earlier deposition testimony; in fact, Plaintiff cannot argue as much because Defendant C. Cotter testified that Plaintiff "did not work overtime." (ECF No. 58-3 at p. 43). It appears that Plaintiff is instead trying to argue that because the amended chart contradicts the original chart (rather than deposition testimony), the amended chart should be barred from Defendants' use. The Court has not found caselaw expanding the holding in *King* in the manner Plaintiff now requests, and the Court will not approve such an expansion now. Although the amended chart's asserted reducible hours are in excess of the asserted reducible hours in the original chart—which is inherently suspicious— Plaintiff will be able to confront Defendants at trial regarding Defendants' convenient recalculation. Additionally, despite discovery being closed, the Court would reopen discovery for the limited purpose of allowing Plaintiff to conduct a deposition regarding the new chart and the circumstances surrounding its creation should he wish to do so.

Lastly, although premature, the Court will briefly address Defendants' argument regarding payments that allegedly off-set the overtime, if any, owed to Plaintiff. This Court has recognized that the "argument that set-offs are categorically prohibited in FLSA cases is not supported by . . . the [C]ourt's own research." *McCoy v. Transdev Servs., Inc.*, No. DKC 19-2137, 2022 WL 951996 at *27 (D. Md. Mar. 30 2022) (denying motion to strike affirmative defense that any overtime claim should be reduced by the amount defendant allegedly overpaid plaintiffs). The Court finds

that such an argument, if made, should appropriately be considered only after a finding of Plaintiff's entitlement to overtime.[4]

Regarding the hours Plaintiff worked, Plaintiff and Defendants have presented the Court with genuine issues of material which are appropriate for a finder of fact's consideration at trial. As such, Plaintiff's Motion will be DENIED as to whether Defendants violated any wage and hour laws.

### C.  The Determination of Plaintiff's Entitlement to Liquidated Damages Is Premature At This Stage of the Proceedings.

The award of liquidated damages is necessarily premised on a finding that Defendants violated the wage and hour laws on which Plaintiff bases his case.  Based on the Court's conclusion that the question of whether Defendants violated any of the relevant wage and hour statutes is properly left to the finder of fact's consideration at trial, the Court need not address liquidated damages at this time.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion (ECF No. 58) is GRANTED in part and DENIED in part.  A separate order follows.


Date: <u>May 18, 2023</u>                                  <u>            /s/            </u>
                                                                            J. Mark Coulson
                                                                            United States Magistrate Judge

---

[44] Regarding the calculation of Plaintiff's hourly rate and whether hours paid but allegedly not worked should contribute to Plaintiff's total hours worked for purposes of overtime entitlement and in the calculation of the appropriate hourly rate, the Court would direct the parties to 29 C.F.R. 778.320.  *See Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (D.Or. 2004) (excluding payments for the paid lunch periods from calculation of the regular rate) (citing 29 C.F.R. 778.320).