IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CASTOLO DIAZ MANCILLA**, | * | |
| Plaintiff, | * | |
| v. | * | Civil Case No. 1:22-0032-JMC |
| **CHESAPEAKE TREE AND OUTSIDE SERVICES, LLC, ET AL.**, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \*

**MEMORANDUM OPINION REGARDING**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Castolo Diaz Mancilla ("Plaintiff"), brings his case against Defendants, Chesapeake Tree and Outside Services, LLC ("Chesapeake Tree"), Chesapeake Outdoor Services, LLC ("Chesapeake Outdoor"), Keith Allen Cotter, and Charlotte Cotter (collectively, "Defendants") under a combination of federal and state statutes. Specifically, Plaintiff alleges violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), its Maryland counterpart, the Maryland Wage and Hour Law, MD. CODE ANN., LAB. & EMPL. § 3-401, *et seq.* ("MWHL"), and the Maryland Wage Payment and Collection Law, MD. CODE ANN., LAB. & EMPL. § 3-501, *et seq.* ("MWPCL"). From February 12-14, 2024, this Court conducted a bench trial. At its conclusion, the Court allowed the parties to submit any proposed findings of fact and conclusions of law by March 22, 2024, and those have now been received. (ECF Nos. 91 & 92). As set forth more fully below, the Court finds in favor of Plaintiff and will enter a damage award as indicated. Plaintiff should file a fee petition by April 30, 2024, with Defendants' opposition due May 15, 2024.

I. **FINDINGS OF FACT**

The Court, in its role as factfinder, and in compliance with Rule 52 of the Federal Rules of Civil Procedure, makes the following findings of fact. In reaching these findings, where relevant to the number of hours Plaintiff worked, the Court has taken into account the articulation of Plaintiff's and Defendants' respective burdens as set forth in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds as stated in Carter v. Pan. Canal Co.*, 463 F.2d 1289, 1293–94 (D.C. Cir. 1972).

Additionally, in its Memorandum Opinion (ECF 66), this Court has already found that Chesapeake Outdoor and Chesapeake Tree were joint employers of Plaintiff, and that Keith Cotter was Plaintiff's employer. Therefore, the remaining issues at trial were as follows: 1) whether Charlotte Cotter was also Plaintiff's employer under the relevant wage and hour laws; 2) the number of overtime hours Plaintiff worked; 3) the amount of unpaid overtime wages, if any, due to Plaintiff; 4) whether there was an objective good-faith basis for Defendants' failure to pay overtime; and, 5) whether there was a bona fide dispute as to Plaintiff's entitlement to overtime wages.

In their Joint Proposed Pretrial Order (ECF No. 74), the parties stipulated that Plaintiff worked for Chesapeake Tree and Chesapeake Outdoor from roughly June 15, 2020, to March 12, 2021, and the Court adopts this stipulation as part of its findings of fact. The parties also do not dispute that the FLSA, MWHL, and MWPCL apply to Defendants' operations, and that Plaintiff is a covered employee for purposes of those laws. The parties, of course, dispute whether Plaintiff worked any overtime hours so as to be entitled to an award of overtime pay.

1. Depending on the week, Plaintiff was paid either $14.00 or $15.00 per hour. Tr. I, p. 34, lines 6-11 and p. 75, lines 12-14. Based on this, Plaintiff's overtime rate

would have been either $21.00 or $22.50 per hour, depending on which hourly rate applied for a given week. The parties do not dispute that Plaintiff was not paid his overtime rate at any time during his employment.[1]

2. Plaintiff both submitted a timecard and a handwritten "invoice" each week reflecting the hours he worked. Tr. I, p. 63, line 17 to p. 64, line 22. Defendants retained none of the timecards and only some of the invoices submitted by Plaintiff. Tr. I, p. 65, lines 6-19. Defendants do not dispute the accuracy of the number of hours Plaintiff submitted, but contended at trial that Plaintiff did not perform any work during the first hour of each day or during his lunch hour even though he was paid for those hours (the Court will list its findings of fact regarding those contentions below).

3. Plaintiff's Exhibit 7 (as amended)[2] accurately lists each weekly paycheck Plaintiff received during his employment, his hourly rate, and the number of hours that Plaintiff submitted (and for which he was paid) that week.

4. Plaintiff believed he was expected to arrive at work at 7:00 am based on his memory of conversations with Defendants. Tr. I, p. 166, lines 3-8. In any event, Plaintiff in fact arrived at work each day at 7:00 am and was paid from that time. Tr. I, p. 171, lines 14-18. Not only was this Plaintiff's unequivocal testimony, but this was

---

[1] From a review of Plaintiff's Exhibit 4, it appears that Plaintiff may have performed "emergency work" on August 4, 2020. Ex. 4 at p. 37. There was testimony at trial that such work was paid at "double time," in that employees were instructed to submit double the number of hours they actually worked or, in some cases, "round up" the number of hours worked to 8 hours. There was no testimony however to verify whether this particular time entry was for emergency work, or which of the two methods of compensation might have been employed (if any) so as to determine whether Plaintiff received time and a half or another premium rate for such work.

[2] Originally, Exhibit 7 listed two checks dated July 2, 2020, but, by agreement of the parties, it was amended to delete one of those, reflecting a pay of $675. This check, though initially thought to be for Plaintiff, was verified by the parties to be for a different employee.

3

corroborated by Defendants' current employee, Pedro Fuentes Cruz, who mostly drove Plaintiff to work. Tr. II, p. 55, line 23 to p. 56, line 12. Even Defendant Keith Cotter conceded that Plaintiff would arrive at 7:00 am with Mr. Cruz. Tr. III, p. 4, lines 16-24.

5. Departure from the shop to the particular job site varied, but was usually between 8:00 and 8:30 am. Tr. I, p. 176, lines 6-10; Tr. II, p. 11, lines 6-8. Between Plaintiff's arrival at the shop and his departure to the job site, Plaintiff assisted other employees in readying the trucks and equipment, cleaning the chipper filter, moving and stacking firewood (from October through the winter), cleaning up trash in the yard, and other tasks. Tr. I, p. 176, lines 21-25; Tr. I, p. 177, line 23 to p. 178, line 23; Tr. I, p. 179, lines 19-23; Tr. I, p. 180, lines 9-22. This was corroborated by employees Scott and Escobar, both of whom are still employed by Defendants. Tr. II, p. 21, line 23 to p. 22, line 6; Tr. II, p. 22, line 20 to p. 23, line 4; Tr. II, p. 29 at lines 7-24; Tr. II, p. 38, line 22 to p. 39, line 1; Tr. II, p. 41, line 23 to p. 42, line 7. Additionally, Defendants knew that Plaintiff was clocking in at 7:00 am and including this time in his weekly hours submission, and Defendants were paying Plaintiff for this time. Tr. I, p. 90, lines 14-21. Paying Plaintiff without protest for time that they now assert was of no benefit undercuts Defendants' trial testimony. Moreover, Defendant Charlotte Cotter suggested an additional benefit to Defendants from the early arrival by Plaintiff and others: to build camaraderie among the workers so that they would be more inclined to "look out for each other" on the job site, promoting worker safety. Tr. III, p. 33, lines 3-15. Combined with other testimony from Defendant Charlotte Cotter about being very mindful of

4

workers' compensation insurance premiums (Tr. I, p. 136, line 19 to p. 137, line 4), this employee activity conferred a benefit beyond the actual tasks being accomplished.

6. Given Findings of Fact 4 and 5, the Court finds that Plaintiff performed work from the time he arrived at the shop at 7:00 am, and that such hours should be included in the calculation of overtime and not deducted from the weekly total as "time paid but not worked."

7. Employees, including Plaintiff, were given an uninterrupted hour for lunch which was typically taken at noon each day according to Supervisor Michael Spindler. Tr. II, p. 13, lines 3-23; Tr. II, p. 19, lines 7-23. There were some occasions where, by agreement of the group, lunch would be delayed a few minutes to accomplish a work task. Tr. II, p. 19, lines 7-14; Tr. II, p. 39, lines 4-10. Other than Plaintiff (who testified that lunch was 20-30 minutes and he often had to perform other work tasks at this time), every witness with first-hand knowledge testified consistent with the above finding of fact including non-parties Messrs. Spindler, Scott, Escobar, Cruz and Wilson. Tr. I, p. 36, lines 15-19; Tr. II, p. 13, lines 3-23; Tr. II, p. 19, lines 7-23; Tr. II, p. 23, line 25 to p. 24, line 11; Tr. II, p. 25, lines 19-21; Tr. II, p. 30, lines 3-4; Tr. II, p. 39, lines 18-23; Tr. II, p. 51, line 10 to p. 52, line 11; Tr. II, p. 56, lines 16-18; Tr. II, p. 67, line 10 to p. 68, line 4. While it is true that a current employee might feel an obligation to tailor his testimony to the benefit of his employer, some of those same non-party witnesses gave testimony supporting Plaintiff on other issues (such as morning duties from arrival to job site departure), undercutting such an assertion of bias. There is also additional circumstantial

evidence supporting that no work was performed for an hour each day in that current employee Adam Wilson testified that he now receives overtime, but only for hours above 45, accounting for each day's lunch hour. Tr. II, p. 74, lines 2-15. Thus, the Court finds that Defendants have carried their burden of negating the inference that would otherwise attach to Plaintiff's testimony. Accordingly, five (5) hours per week should be deducted from Plaintiff's weekly total for purposes of determining overtime hours.

8. Relying on Plaintiff's Exhibit 7, Plaintiff is entitled to the following overtime amounts (remembering that Plaintiff was paid his base rate for such hours such that he may collect only the overtime premium for such hours):

| Date | Calculation | Amount |
|---|---|---|
| 7/16/20: | 1.0 hrs x $7.00 = | $7.00 |
| 9/24/20: | 2.5 hrs x $7.00 = | $17.50 |
| 10/14/20: | 3.0 hrs x $7.00 = | $21.00 |
| 10/29/20: | 1.0 hrs x $7.00 = | $7.00 |
| 11/25/20: | 2.0 hrs x $7.50 = | $15.00 |
| 1/21/21: | 3.5 hrs x $7.50 = | $26.25 |
| **TOTAL:** | | **$93.75** |

9. Defendant Charlotte Cotter owns the controlling interest in Chesapeake Tree. Tr. I, p. 30, lines 7-13; Tr. I, p. 54, lines 17-21. Although Chesapeake Outdoor was owned by three employees, none of them shared in the profits of that business, suggesting that they were owners in name only, and that Chesapeake Outdoor was also controlled by Defendants Charlotte and Keith Cotter. Tr. I, p. 31, lines 9-13; Tr. I, p. 56, lines 8-19. Charlotte Cotter had the ability to fire employees. Tr. I, p.

31, lines 1-8. Based on Defendants' sworn interrogatory answers, "At the start of employment, Charlotte Cotter met with Plaintiff to discuss with Plaintiff his hourly rate, the paid hour for lunch, the time cards, time clock, and his folder for time sheets." Pl. Ex. 19 at p. 7; Pl. Ex. 20 at p. 7. Although both Defendant Keith Cotter and Defendant Charlotte Cotter disclaimed that admission at trial, the Court did not find that testimony persuasive in light of the other facts in the record. Even if, however, such facts are ignored, Plaintiff has otherwise established that Charlotte Cotter was also an "employer" for purposes of the statutes. For example, Charlotte Cotter also had the ability on her own initiative to change employee pay and, in fact, changed Plaintiff's pay from $14.00 per hour to $15.00, and then back again at various points during his tenure. Tr. I, p. 34, lines 6-11; Tr. p. 35, lines 14-20. That was based both on a mistaken belief as to his job duties (i.e., whether or not he was a "driver") (Tr. I, p. 75, line 17 to p. 76, line 10), but also on her sense that it would be "unfair" to keep Plaintiff at $15.00 per hour when other employees with a longer tenure were at $14.00. Tr. I, p. 138, lines 7-22. This suggests complete discretion on Ms. Cotter's part in terms of setting pay. Ms. Cotter also verified the hours Plaintiff was submitting and, if she found a discrepancy, had the ability to investigate and rectify it with the employee. Tr. I, p. 58, line 22 to p. 59, line 18. Ms. Cotter also wrote each week's paychecks and had the practice of not paying overtime when the employee's hours were greater than 40. Tr. I, p. 121, line 14 to p. 122, line 10; Tr. I, p. 131, lines 1-15. Keith Cotter (whom the parties do not dispute was an "employer" for purposes of the statutes) verified that Ms. Cotter handled all the "paperwork." Tr. I, p. 30, lines 10-13; Tr. I, p. 31, lines 9-16.

Therefore, as elaborated upon in the Court's conclusions of law, the Court finds that Ms. Cotter also qualifies as an "employer" for purposes of the statutes.

10. As will be discussed more fully in the Court's conclusions of law below, Defendants did not introduce any evidence that they had reasonable grounds for believing that their deduction of an hour a day from Plaintiff's weekly hours to account for the time between his 7:00 am arrival and his departure to the day's job site for purposes of calculating overtime was not a violation of federal and state wage and hour laws. Likewise, Defendants did not introduce any evidence that their failure to include such hours was the result of a bona fide dispute. While it is true that Defendants believed that insufficient work was being performed in the morning to justify including such hours in overtime, and that they were entitled to a "credit" for the paid lunch hour they provided, there is insufficient support for both positions to satisfy the "reasonable grounds" and "bona fide dispute" standards under the governing law.

11. Plaintiff's evidence regarding consequential effects of Defendants' failure to pay overtime was sparse and imprecise. He testified he is the only family member earning income and that the money Defendants failed to pay was what he needed to buy food but was not specific about that. Tr. I, p. 187, lines 6-11. He further testified that he had to take time off to attend trial (Tr. I, p. 187, lines 1-7), but these are no greater burdens than those imposed on any other litigant.

## II. CONCLUSIONS OF LAW

1. As noted above, the parties do not dispute that the FLSA, MWHL and MWPCL apply to Defendants' operations during the relevant period. The FLSA and the MWHL require employers to pay their employees a minimum hourly wage and an overtime rate when employees work more than 40 hours in a week. 29 U.S.C. §§ 206(a)(1), 207(a)(1); MD. CODE ANN., LAB. & EMPL. §§ 3-413, 415. "Claims under the FLSA and the MWHL can be analyzed together. This is because '[t]he requirements under the MWHL mirror those of the federal law.'" *Gaither v. Davi Transp. Servs., LLC*, No. 18-cv-1447-ELH, 2020 WL 2614783, at *4 (D. Md. May 22, 2020) (quoting *Turner v. Human Genome Scis., Inc.*, 292 F. Supp. 738, 744 (D. Md. 2003); citing *Friolo v. Frankel*, 373 Md. 501, 513 (2003)).

2. The FLSA specifies that, except as otherwise provided by 29 U.S.C. § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1).

3. A plaintiff carries the burden of proof in an FLSA claim for overtime wages. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87, (1946) *superseded by statute on other grounds as stated in Carter v. Pan. Canal Co.*, 463 F.2d 1289, 1293–94 (D.C. Cir. 1972). But "[t]his burden is light, especially when the employer's records are inaccurate or inadequate." *Randolph v. Powercomm Constr., Inc.*, 309 F.R.D. 349, 362–63 (D. Md. 2015). In such circumstances, the employee must produce "sufficient evidence to show the amount and extent of

that work as a matter of just and reasonable inference." *Mt. Clemens Pottery Co.*, 328 U.S. at 687. If the employee does so, the employer has the burden to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id*. at 687–88.

4. Applying this standard in its Findings of Fact, *supra*, the Court has already found that Defendants failed to negate the reasonableness of the inference to be drawn from Plaintiff's evidence with respect to hours worked by Plaintiff in the morning between his 7:00 am arrival and his departure for the job site. In fact, even under a preponderance standard, Plaintiff would have met that burden. Thus, the Court found that Plaintiff worked 13 hours of overtime but was not paid his overtime rate for such work. The Court therefore finds that Defendant violated the FLSA and MWHL. Accordingly, there should be no deduction from Plaintiff's weekly totals for such time.

5. At the same time, the Court has already found that Defendants' evidence does negate the reasonableness of the inference to be drawn from Plaintiff's evidence with regard to the lunch hour. Specifically, the Court has found that Defendants provided one hour for lunch each day, that Plaintiff took that hour, and that Plaintiff was not required to work during that hour. The Department of Labor's implementing regulations for the FLSA include 29 C.F.R. §785.19(a) regarding lunch breaks and other meal periods, providing as follows:

> ***Bona fide meal periods.*** Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a

>factory worker who is required to be at his machine is working while eating.

*Id.*; *see Bagrowski v. Md. Port Auth.*, 845 F. Supp. 1116, 1118–20 (D. Md. 1994). The lunch breaks provided by Defendants in this case meet that definition and are thus properly excluded from work time and, correspondingly, from any overtime calculation. Because Plaintiff (and all Defendants' employees) included (and were paid for) this non-worktime in their weekly hours totals, it is appropriate to subtract them from such totals when calculating overtime hours.

Defendants have raised the issue of whether they should receive a "credit" against overtime wages for the paid lunch hour, reasoning that because they need not have paid Plaintiff at all for such time yet did, such payments should offset any owed overtime amounts. It is clear that they should not. In *Smiley v. E.I. Dupont De Nemours & Co.*, 839 F.3d 325, 333 (3d Cir. 2016), *cert. denied sub nom. E.I. Du Pont De Nemours & Co. v. Smiley*, —— U.S. ——, 138 S. Ct. 2563 (2018), an employer sought a similar offset for paid lunch breaks but, relying on 29 U.S.C. §207(h) of the FLSA, the Third Circuit rejected such a credit, stating "It is undisputed that the compensation paid for meal breaks was included in plaintiffs' regular rate of pay, and thus could not qualify as 'extra compensation.'" Instead, the court narrowly construed the "offset" provisions of that section to apply only when a premium rate has been paid. *Id.; see Acosta v. Team Env't, LLC*, 363 F. Supp. 3d 681, 687 (S.D.W. Va. 2019) ("Inasmuch as the only instances explicitly included in the offset portion of the FLSA, § 207(e)(5)-(7), require a 'premium rate paid,' it is reasonable to infer that payments made at the regular rate cannot be considered 'extra compensation' that may offset the amount owed for overtime."); *see also Acosta v. Romero Landscaping, Inc.*, No. PWG-17-2587, 2019 WL 4447233, at *4–6 (D. Md. Sept. 17, 2019) (emphasizing "premium rate" requirement). There is no evidence of a premium rate being paid here. Although there was testimony about

"double time" being paid for "emergency work," there was no evidence presented that Plaintiff in fact did emergency work or the rate he was paid for such work. And the possible suggestion of emergency work during the first week of August of 2020 is not one of the weeks included in Plaintiff's damages calculations in any event.

Therefore, in looking at Plaintiff's weekly hours totals, and leaving them intact for purposes of morning work but subtracting the five (5) hours per week of non-worktime lunch, the Court has already found that Plaintiff worked a total of 13 overtime hours. As a general rule, the FLSA provides that an employee is entitled to one and one-half times the employee's "regular rate" for all hours in excess of forty hours. *See* 29 U.S.C. § 207(a)(1); *Monahan v. Cnty. of Chesterfield, Va.*, 95 F.3d 1263, 1267 (4th Cir. 1996). The employee's "regular rate" is the hourly rate that the employer pays the employee for the normal, non-overtime, forty-hour workweek. *See Walling v. Youngerman–Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945).

6. As previously found above, Plaintiff was paid $14.00/hour for some weeks and $15.00/hour for others, as set forth in Plaintiff's Exhibit 7. Thus, Plaintiff's overtime rates are $21.00 per hour and $22.50 per hour, respectively. Plaintiff has already been paid his regular rate for his overtime hours, such that Plaintiff is entitled to an additional "half time" wage that has not been paid. That amounts to an additional $7.00 per hour and $7.50 per hour, respectively. Reviewing the weeks where Plaintiff is owed overtime and multiplying those hours by the appropriate "half time" rate applicable to that week, Plaintiff is owed $93.75. *See* Finding of Fact 8.

7. The FLSA provides that an employer who violates the Act shall be liable to the affected employee in the amount of their unpaid wages and "in an additional equal amount as

liquidated damages." 29 U.S.C. § 216(b).  "Under the FLSA, there is a presumption in favor of liquidated damages against employers who violate the statute." *Rogers v. Savings First Mortg., LLC*, 362 F. Supp. 2d 624, 637 (D. Md. 2005).  However, under 29 U.S.C. § 260 of the Portal–to–Portal Pay Act, a court may, in its discretion, reduce or eliminate an award of liquidated damages if the employer shows that the "act or omission giving rise to [the FLSA] action was in good faith and that [the employer] had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]."  The employer has the "plain and substantial burden" of persuading the court that the "failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict." *Mayhew v. Wells*, 125 F.3d 216, 220 (4th Cir. 1997) (internal citations and quotations omitted); *see also* 29 C.F.R. § 790.22(a)–(b).  "This burden is a difficult one to meet . . . and [d]ouble damages are the norm, single damages the exception." *Rogers*, 362 F. Supp. 2d at 638 (internal citation and quotation omitted).

       8. Assumptions of the law do not amount to good faith or show that an employer reasonably believed it was in compliance with the FLSA. *Salazar v. R.A.W. Tree Expert*, No. ELH 19-2039, 2020 WL 13249612, at *2 (D. Md. Nov. 10, 2020) (internal citations omitted).  Further, ignorance or uncertainty of the law does not support a finding of good faith. *See Lockwood v. Prince George's Cnty.*, 58 F. Supp. 2d 651, 658 (D. Md. 1999), *aff'd*, 217 F.3d 839 (4th Cir. 2000).  Rather, an employer must "take active steps to ascertain the dictates of the FLSA and then move to comply with them."  *Id.* (citing *Reich v. S. New England Telecomm. Corp.*, 121 F.3d 58, 71 (2d Cir. 1997)).  Defendants offered no evidence of such steps with regard to the violations found. Thus, the Court concludes that Defendants have not carried their burden, and an award of

liquidated damages is appropriate under the FLSA. The Court will address below whether, alternatively, Plaintiff is entitled to treble damages under the MWPCL.

    9. The MWPCL provides that if an employer fails to pay an employee as required and two weeks have elapsed from the date on which the employer is required to have paid the wages, the court may award the employee an amount not exceeding three times the wage and reasonable counsel fees and other costs if such failure was not the result of a bona fide dispute. MD. CODE ANN., LAB. & EMPL. § 3-507.2(b). The Court finds that Defendants violated the MWPCL. Although Plaintiff apparently never demanded his unpaid overtime, Plaintiff was unrepresented and unaware of his rights to overtime at that point, and he therefore cannot be said to have waived his statutory rights. "Congress enacted the FLSA to 'protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce.'" *Johnson v. CRC Holding, Inc.*, No. JKB-16-2937, 2017 WL 914998, at *2 (D. Md. Mar. 7, 2017) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). The FLSA guarantees payment of overtime wages. 29 U.S.C. § 207(a)(1). Generally, "[t]he right to wage protections under the FLSA is not . . . negotiable without approval by a court or by the Department of Labor . . . [T]he pertinent Maryland statutes are similarly non-waivable." *Johnson*, 2017 WL 914998, at *2. Allowing employees to waive their FLSA rights "would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)).

    10. A plaintiff may be "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelp Com. Builders, Inc.*, No. 10-cv-2016-WGC, 2011 WL 5826677, at *3 (D. Md. Nov. 17, 2011). "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions

that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Clancy v. Skyline Grill, LLC*, No. CIV. ELH-12-1598, 2012 WL 5409733, at *8 (D. Md. Nov. 5, 2012), *report and recommendation adopted*, No. CIV.A. ELH-12-1598, 2013 WL 625344 (D. Md. Feb. 19, 2013) (quoting *Lopez v. Lawns R Us*, No. DKC 07-2979, 2008 WL 2227353, at *4 (D. Md. May 23, 2008)).

11. For reasons similar to those which led the Court to find that FLSA liquidated damages are appropriate, the Court does not find that Defendants withheld the overtime due to Plaintiff because of a bona fide dispute. However, it has become customary in this District to award double damages under the FLSA, but not treble damages under the MWPCL, when the "defendants '[do] not offer any evidence of a bona fide dispute' to make liquidated damages inappropriate, [but the] plaintiffs '[do] not offer any evidence of consequential damages suffered because of the underpayments.'" *Clancy*, 2012 WL 5409733, at *8 (quoting *Lopez*, 2008 WL 2227353, at *4); *see also Castillo v. D&P Pro. Servs., Inc.*, No. CIV.A. DKC 14-1992, 2015 WL 4068531, at *6–*7 (D. Md. July 2, 2015); *Labuda v. SEF Stainless Steel, Inc.*, No. CIV.A. RDB-11-1078, 2012 WL 1899417, at *3 (D. Md. May 23, 2012); *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 800 (D. Md. 2010).

12. In this case, the Court does not conclude that awarding beyond FLSA liquidated damages is required to fulfill the dual purposes of deterrence and compensation. As for penalizing employer behavior, the amount of unpaid overtime is less than $100 over a nine-month period. In the context of total wages paid (including a paid lunch hour during which no work was required) and a lack of subterfuge by Defendants, treble damages are unnecessary to fulfill the purposes of the wage and hour laws. Moreover, Plaintiff offered little tangible evidence of consequential

15

damages such that treble damages cannot be justified on that alternative basis. Under such circumstances, the Court finds the FLSA's liquidated damages provision to be adequate.

13. Based on the above, Plaintiff is hereby awarded $187.50 in total damages for unpaid overtime, including liquidated damages under the FLSA ($93.75 x 2).

14. The Court will defer its award of attorney fees and costs until Plaintiff's fee petition (due by April 30, 2024) and Defendants' opposition (due by May 15, 2024) are considered.


Date: April 4, 2024                              _____/s/_____
                                                 J. Mark Coulson
                                                 United States Magistrate Judge