IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CASTOLO WILMER DIAZ MANCILLA,** | * | |
| | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No: 1:22-cv-00032-JMC |
| **CHESAPEAKE OUTDOOR SERVICES, LLC et al,** | * | |
| | * | |
| *Defendants.* | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

On January 6, 2022, Plaintiff filed this wage and overtime lawsuit against (1) Chesapeake Outdoor Services, LLC, (2) Chesapeake Tree & Outside Services, LLC, (3) Keith Allen Cotter, and (4) Charlotte Ellen Cotter (collectively "Defendants"). (ECF No. 1). Specifically, Plaintiff brings claims under three different statutes: (1) the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.*, ("FLSA"); (2) the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Employ. §§ 3-401, *et seq.* ("MWHL"); and (3) the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Employ. §§ 3-501 *et seq*. ("MWPCL"). *Id.* at 2.[1] The Court conducted a bench trial from February 12, 2024, to February 14, 2024. (ECF Nos. 82, 83, 84). The Court then issued a Memorandum Opinion on April 4, 2024, in which it concluded that Plaintiff's claims were meritorious and that Plaintiff was entitled to a total of $187.50 in unpaid overtime wages and liquidated damages. (ECF Nos. 93, 94). Presently before the Court is Defendants' Motion to Alter or Amend Judgment (ECF No. 95). The motion is fully briefed and

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document.

no hearing is necessary. (ECF Nos. 98, 103); *see* Loc. R. 105.6 (D. Md. 2023). For the foregoing reasons, Defendants' motion will be denied.

## I. BACKGROUND

The facts of this case are more fully detailed in the Court's prior summary judgment opinion and the Court's Memorandum Opinion Regarding Findings of Fact and Conclusions of Law following the bench trial. (ECF Nos. 66, 93). To briefly summarize, the two organizational Defendants operate a tree removal and care business purportedly owned and managed by the individual Defendants. *Id.* Plaintiff was a "groundsman" at all times relevant to his claims, who alleges that he was insufficiently paid overtime compensation in violation of the FLSA, MWHL, and MWPCL. *Id.*

Relevant for purposes of Defendants' motion, the Court determined that Plaintiff was owed overtime payments for the following days in the following amounts:

1. 7/16/2020 in the amount of $7.00 unpaid overtime;

2. 9/24/2020 in the amount of $17.50 unpaid overtime;

3. 10/14/2020 in the amount of $21.00 unpaid overtime;

4. 10/29/2020 in the amount of $7.00 unpaid overtime;

5. 11/25/2020 in the amount of $15.00 unpaid overtime; and

6. 1/21/2021 in the amount of $26.25 unpaid overtime.

*Mancilla v. Chesapeake Tree & Outside Servs., LLC*, No. CV 1:22-0032-JMC, 2024 WL 1465542, at *3 (D. Md. Apr. 4, 2024).

Defendants raised the issue of whether they should receive any sort of offset against the above unpaid overtime wages because they paid Plaintiff for a lunch hour during which Plaintiff did not actually work. *Id.* at *5. Defendants separately argued that they are entitled to offset any

2

unpaid overtime wages because Defendants overpaid Plaintiff in some weeks. (ECF No. 92 at 8–9). Specifically, that Defendants overpaid Plaintiff certain weeks that he was paid $14.00/hour and other weeks that Plaintiff was paid $15.00/hour (Plaintiff's pay was purposely raised from $14.00/hour to $15.00/hour on Defendant Cotter's mistaken belief that Plaintiff drove Defendants' trucks in addition to his duties as a groundsman).

The Court declined to view the paid lunch hour as satisfying the credit offset provisions of 29 U.S.C. § 207, but also determined—based on the testimony at trial—that Plaintiff was not entitled to compensation for those lunch hours and accordingly subtracted that lunch hour compensation where necessary in calculating Plaintiff's unpaid overtime wages. *Mancilla*, 2024 WL 1465542, at *5. However, the Court did not explicitly address the second overpayment argument, leading Defendants to file the present motion. It does so now but reaches the same conclusion.

## II. LEGAL STANDARD

The specific legal basis for Defendants' motion is unclear because they include no citations to any Federal Rule of Civil Procedure or case law throughout their entire motion. The Court therefore construes Defendants' motion as one under Rule 59(e) given the relief it seeks—to alter or amend the Court's judgment following trial. "Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment no later than twenty-eight days after the entry of the judgment." *Brault v. Trans Union, LLC*, No. GJH-18-3244, 2019 WL 7293396, at *2 (D. Md. Dec. 27, 2019) (citing Fed. R. Civ. P. 59(e)). This process effectively "permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (quoting *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995)). "A

Rule 59(e) motion is discretionary. It need not be granted unless the district court finds that [1] there has been an intervening change of controlling law, [2] that new evidence has become available, or [3] that there is a need to correct a clear error or prevent manifest injustice." *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 411 (4th Cir. 2010); *see also U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002). Clear error or manifest injustice occurs where a court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Brault*, 2019 WL 7293396, at *2 (citing *Wagner v. Warden*, No. ELH-14-791, 2016 WL 1169937, at *3 (D. Md. Mar. 24, 2016)). "A prior decision does not qualify for this third exception by being 'just maybe or probably wrong; it must . . . strike us with the force of a five-week-old, unrefrigerated dead fish.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009) (quoting *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 1995 WL 520978, at *5 n.5 (4th Cir. 1995) (unpublished)); *Woodruff v. United States*, No. 1:22-CV-00826-JMC, 2023 WL 8716877, at *2 (D. Md. Dec. 18, 2023). Generally, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403. The Fourth Circuit reviews a district court's decision to grant or deny a Rule 59(e) motion under an abuse of discretion standard. *Ward v. AutoZoners, LLC*, 958 F.3d 254, 271 (4th Cir. 2020); *Bogart v. Chappell*, 396 F.3d 548, 555 (4th Cir. 2005).

### III.   ANALYSIS

Defendants set forth no intervening change of law or newly available evidence, so the Court construes Defendants' argument as being based on the third exception. Specifically, Defendants claim that they overpaid Plaintiff (1) for pay periods ending 8/7/2020, 9/4/2020, and 9/18/2020, during which Plaintiff was paid at the $14.00/hour rate; and (2) for nearly all pay periods during

which Plaintiff was paid at the $15.00/hour rate under Defendant Cotter's mistaken belief as to Plaintiff's job duties. (ECF No. 95 at 2). These overpayments and corresponding time periods are described in Defendants' motion as well as Defendants' Exhibit 1 admitted at trial.

Plaintiff's opposition argues—correctly—that none of the alleged overpayments may be considered a "credit" as provided by 29 U.S.C. § 207(e)(5)–(7) because there is no indication that such payments were "premium" payments as described in those provisions. Defendants rebut that "This is not a situation of a premium payment or other wage renumeration, but rather, overpayment," thereby effectively conceding that none of the overpayments are permissible under those provisions. (ECF No. 103 at 1). The Court is hesitant to continue its analysis past this point given the language of 29 C.F.R. § 778.201:

> The three types of extra premium payments which may [] be treated as overtime premiums for purposes of the [FLSA] are outlined in section 7(e)(7), (6) and (7) of the [FLSA] as set forth in § 778.200(a) . . .
>
> Section 7(h) of the [FLSA] specifically states that the extra compensation provided by these three types of payments may be credited toward overtime compensation due under section 7(a) for work in excess of the applicable maximum hours standard. *No other types of remuneration for employment may be so credited*.

29 C.F.R. § 778.201(b)–(c) (emphasis added). Nevertheless, there is some existing authority from this Court suggesting that overpayments not strictly falling within § 207's scope may be permissible under very limited circumstances. None of those circumstances apply here.

In *McCoy v. Transdev Services, Inc.*, this Court denied an FLSA plaintiffs' motion to strike a defendant's affirmative defense that the defendant "may 'set-off' against the wages it owes plaintiffs any wages that it previously overpaid to plaintiffs." No. CV DKC 19-2137, 2022 WL 951996, at *27 (D. Md. Mar. 30, 2022). The plaintiffs in that case argued that setoffs are categorically prohibited under the FLSA, which the Court rejected. *Id.* The Court then described how other courts have handled similar situations before permitting the defendant to assert as an

5

affirmative defense that the defendant "overpaid Plaintiffs and is entitled to set off the overpayment." *Id.*

The Court's decision was made irrespective of the § 207's "credit" provisions, and § 207(h) was not relied upon or otherwise mentioned in permitting the defendants to pursue their offset defense. Rather, it relied primarily upon the Fifth Circuit's decision in *Martin v. PepsiAmericas, Inc.*, which explained how—in the Fifth Circuit—employers have been permitted to "set-off overpayments in some work periods against shortfalls in others" where those overpayments are "akin to pre-payments, not prohibited by the Code of Federal Regulations or the FLSA." 628 F.3d 738, 741 (5th Cir. 2010). The Fifth Circuit made clear, though, that it "continue[s] to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Id.* at 742.

Defendants do not argue or otherwise provide any case law demonstrating that their overpayments are properly considered as wages that Defendants pre-paid Plaintiff. Neither was such information established during trial. In fact, Defendants' motion provides not a single citation to any legal authority and their reply provides citations only to (1) some of the cases Plaintiff cites in his opposition to distinguish them; and (2) cases noting that FLSA plaintiffs should not receive windfalls. However, in distinguishing Plaintiff's case law, Defendants do reference the United States District Court for the Southern District of Iowa's opinion in *Bell v. Iowa Turkey Growers Co-op*, in which that court noted that "courts holding that credits may be applied cumulatively generally do so on the basis that limiting credits to a pay period would grant the plaintiffs a windfall." 407 F. Supp. 2d 1051, 1063 (S.D. Iowa 2006). But Defendants omit the next sentence in that decision: "After careful consideration, this Court agrees with the courts that have held that credit may only be applied *within a pay period*." *Id.* (emphasis added). As that court's repeated

use of the word "credit" suggests, though, the court's decision regarded analysis of § 207's applicability to that case.

In *Mullins v. Howard County, Maryland*, the defendant argued that its "employees were paid for overtime that they never worked, resulting in a total overpayment" of wages to those plaintiffs. 730 F. Supp. 667, 669 (D. Md. 1990). The plaintiffs in that case countered that any offsets for such overpayments were impermissible under the FLSA. *Id.* at 672–73. Relying on this Court's prior decision in *Harrington Empire Construction Co.*, 71 F. Supp. 324 (D. Md. 1947), *aff'd as modified*, 167 F.389 (4th Cir. 1948), we concluded that "overpayment made during the work period may be credited against amounts due *during that same work period*." *Mullins*, 730 F. Supp. at 673; *see also Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 332–33 (N.D. Ill. 2000); *cf. Rudy v. City of Lowell*, 777 F. Supp. 2d 255, 261–62 (D. Mass. 2011); *Stiller v. Costco Wholesale Corp.*, No. 3:09-CV-2473-GPC-BGS, 2013 WL 5417134, at *4–6 (S.D. Cal. Sept. 26, 2013). Further, *Mullins* involved a situation in which the defendant overpaid plaintiffs by providing straight *and* overtime wages for hours that the plaintiffs never actually worked—a different situation than the type of overpayment setoff Defendants seek in this case.

Regarding the overpayments made to Plaintiff while he was paid at a rate of $14.00/hour, none of those overpayments were made during the same work periods that the Court determined Plaintiff was owed unpaid overtime wages, even assuming *arguendo* that the above case law provides Defendants with an avenue to seek setoffs not contemplated by § 207(h). According to Defendants' Exhibit 1, Defendants' first overpayment occurred in the 8/7/2020 paycheck, which does not correspond with the unpaid overtime hours that Plaintiff was owed from 7/17/2020. The 9/4/2020 and 9/18/2020 overpayments likewise do not correspond with the pay periods under which Plaintiff is owed unpaid overtime hours that Plaintiff worked on 9/24/2020 or 10/14/2020.

Defendants are therefore unable to offset their liability with any of their overpayments on 8/7/2020, 9/4/2020, or 9/18/2020 while Plaintiff was paid at a rate of $14.00/hour.

Regarding the overpayments resulting from Plaintiff being paid at a rate of $15.00/hour, this is not the type of overpayment contemplated by the Court's prior decisions for which Defendants may offset their liability. Plaintiff's raise in hourly rate was not the result of any computer, payroll processing, or clerical error. Rather, Defendant Cotter purposely increased Plaintiff's pay rate based on her belief as to Plaintiff's job duties before deciding to reduce it when she found out he was not a driver in "fairness" to drivers and longer tenured employees. Tellingly, Defendants took no steps at the time to recoup those payments or to credit them against future pay. These payments do not fall within any of those listed in § 207(e)(5)–(7), there is no reason to consider these payments as pre-paid wages, and Defendants provide no authority entitling them to a setoff for paying Plaintiff at a different regular rate for some periods based on his employers' mistaken beliefs as to his job duties. Rather, numerous federal courts analyzing similar situations with reference to § 207 have held that mistakenly paying a plaintiff above their regular rate or even mistakenly paying a plaintiff at their regular rate for hours they never actually worked cannot be relied upon to offset an employer's liability for unpaid overtime compensation under the FLSA. *See, e.g.*, *Bell*, 407 F. Supp. 2d at 1062–63; *Johnson v. D.M. Rothman Co.*, 861 F. Supp. 2d 326, 334 n.10 (S.D.N.Y. 2012) ("[H]owever, [defendant] is not entitled to credit the 2.5 hours of regular wages mistakenly paid, since that is not 'premium' compensation paid for work in excess of regular hours."); *cf. Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 21–23 (2d Cir. 2002); *Acosta v. Team Env't, LLC*, 363 F. Supp. 3d 681, 687 (S.D.W. Va. 2019); *Guan v. Long Island Bus. Inst., Inc.*, No. 15CV2215CBAVMS, 2017 WL 11703860, at *5 (E.D.N.Y. Sept. 30, 2017). Accordingly, even assuming *arguendo* that Defendants have highlighted a potential means of

qualifying for an offset under the FLSA not expressly within § 207(h)'s scope, Defendants have not presented any authority entitling them to the specific offsets they seek. The Court is therefore unable to conclude that the judgment previously entered was "clear error" or "manifest injustice" warranting amendment. *Robinson*, 599 F.3d at 411.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Alter or Amend Judgment (ECF No. 95) is denied.

Date: May 10, 2024                                    /s/
                                              J. Mark Coulson
                                              United States Magistrate Judge